**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | | |
|---|---|---|
| COURTNEY HOLLEY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.:  7:25-CV-00041 (WLS) |
| | : | |
| COOK COUNTY SCHOOL | : | |
| DISTRICT, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**ORDER**

Before the Court are Defendant Cook County School District's Motion to Dismiss (Doc. 25) and Defendants Corkey Taylor, Joy Folsom, and Becky Ratts' Motion to Dismiss (Doc. 26). For the reasons discussed below, the Motions are **GRANTED**, in part, and **DENIED**, in part.

## I.    PROCEDURAL BACKGROUND

On April 9, 2025, Plaintiff Courtney Holley ("Plaintiff") filed the above-captioned action. (Doc. 1). The operative complaint, the Second Amended Complaint ("SAC") (Doc. 24), was filed on October 11, 2025. The SAC alleges five (5) causes of action. Count I alleges retaliation in violation of Title VII. (Doc. 24 ¶¶ 61–64). Count II alleges retaliatory hostile work environment in violation of Title VII. (*Id.* ¶¶ 65–68). Count III alleges retaliation in violation of 42 U.S.C. § 1981. (*Id.* ¶¶ 69–73). Count IV alleges retaliatory hostile work environment in violation of § 1981. (*Id.* ¶¶ 74–78). Count V alleges retaliation in violation of the Georgia Whistleblower Act. (*Id.* ¶¶ 79–82). Count VI alleges a claim for intentional infliction of emotional distress under Georgia law. (*Id.* ¶¶ 83–87). And Count VII alleges a claim for litigation expenses under O.C.G.A. § 13-6-11. (*Id.* ¶¶ 88–89). Plaintiff also seeks to recover attorney fees and expenses under other state and federal laws. (*Id.* at 12–14).

Defendant Cook County School District (the "District") filed its Motion to Dismiss (Doc. 25) on October 27, 2025. Defendants Corkey Taylor, Joy Folsom, and Becky Ratts

1

(collectively, "Individual Defendants") filed their Joint Motion to Dismiss (Doc. 26) that same day. Plaintiff filed a Response (Doc. 27) on November 10, 2025, which incorporates by reference her arguments made in response to Defendants' previous motions to dismiss.[1] (*See* Docs. 14, 15, & 20). Defendants filed a consolidated Reply (Doc. 28) on November 20, 2025. As such, the Motions are fully briefed and ripe for resolution.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a party to assert by motion the defense of failure to state a claim upon which relief can be granted. A motion to dismiss a plaintiff's complaint under Rule 12(b)(6) should not be granted unless the plaintiff fails to plead enough facts to state a claim for relief that is plausible, and not merely just conceivable, on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Dismissal for failure to state a claim is proper if the factual allegations are not 'enough to raise a right to relief above the speculative level.'" *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (quoting *Rivell v. Priv. Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008)). "Stated differently, the factual allegations in the complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief.'" *Edwards*, 602 F.3d at 1291 (quoting *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007)). The plausibility standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"; rather, a complaint must make plausible, factual assertions that allow the Court to draw the required connections from the alleged harm and the requested relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

---

[1] The Court, and other courts in this Circuit, generally disfavor the incorporation by reference of arguments made in earlier filings on the Docket. The practice raises problems related to page limitations and "pawn[s] off to the Court [ ] the party's duty to make its own arguments[.]" *Euclid Turnaround Opportunity Fund LP v. Amerant Equip. Fin.*, No. 25-CV-20647, 2025 WL 3905174, at *7 n.4 (S.D. Fla. Oct. 6, 2025); *see Biedermann v. Ehrhart*, No. 1:20-CV-01388, 2021 WL 1061794, at *1 (N.D. Ga. Mar. 19, 2021) (explaining that incorporation by reference "is problematic" because "cross-referencing to another brief complicates the Court's review and understanding of the issues" and allows parties to "exceed[ ] the applicable page limits" and denying a motion to dismiss on that basis). While the Court is under no obligation to search for a party's arguments buried within another brief, and parties who engage in this incorporation-by-reference-practice do so at their own peril, the Court will, in this limited instance, accept Plaintiff's arguments in her first response brief, given that Defendants' earlier motions to dismiss are nearly identical to the motions presently before the Court.

The Court must conduct its analysis "accepting the allegations in the complaint as true and construing them in the light most favorable to the [p]laintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). In evaluating the sufficiency of a plaintiff's pleadings, the Court must "make reasonable inferences in [p]laintiff's favor, 'but [is] not required to draw plaintiff's inference.'" *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (quoting *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005)), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012). The Supreme Court instructs that while on a motion to dismiss "a court must accept as true all of the allegations contained in a complaint," this principle "is inapplicable to legal conclusions," which "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 555), for the proposition that courts "are not bound to accept as true a legal conclusion couched as a factual allegation" in a complaint.

## III.    LAW AND ANALYSIS

All Defendants move to dismiss Plaintiff's claims under Rule 12(b)(6), contending that Plaintiff has failed to state a claim upon which the Court may grant relief. (Docs. 25-1 & 26-1); *see* Fed. R. Civ. P. 12(b)(6).

### A.    Plaintiff's Allegations

As alleged, Plaintiff was the Human Resources Director and Title IX Coordinator for the Cook County School District beginning in March of 2019. (Doc. 24 ¶ 15). In this position, Plaintiff was responsible for overseeing personnel decisions to ensure compliance with District policy and procedure as well as state law, including decisions related to retired employees returning to work. (*Id.* ¶ 34). Plaintiff reported directly to the superintendent who made all hiring, firing, and other related employment decisions. (*Id.* ¶¶ 15–16).

Sometime in 2024, Plaintiff became aware of an alleged scheme perpetrated by District employees to defraud Georgia's Teacher Retirement System (TRS). (*Id.* ¶¶ 18, 33–35). Under this scheme, employees, who were predominantly White, were offered the opportunity to "retire" to trigger their TRS retirement benefits with an understanding and agreement that the retiree would be re-hired into the now-vacant position. (*Id.* ¶ 19). This arrangement allowed the District to save a percentage of the contemplated salary for that position and eliminated

3

the District's health care premium costs for the retirees by transferring those payments to the TRS. (*Id.* ¶ 22). The TRS prohibits these types of agreements by requiring certification that a retiree returning to work has not entered into any agreement with a TRS employer that allows them to return to a TRS covered position, including as an independent contractor. (*Id.* ¶ 23). The re-hiring school board must certify the same to the board of trustees. (*Id.* ¶ 24). Plaintiff alleges that these agreements were illegal, that the District made false certifications that no such agreements existed, and that these improper offers for "false retirement" were made overwhelmingly in favor of White employees. (*Id.* ¶¶ 25, 27). In fact, during the 2024–2025 school year, four White employees in the District's central office retired under the fraudulent scheme. (*Id.* ¶ 32). All fifteen employees who worked in the District's central office were White. (*Id.* ¶ 31). The District's finance director allegedly facilitated the scheme by "run[ning] the retirement numbers plus the return to work pay" for White employees considering retirement so that those employees could discuss the tax consequences of the rehiring process with their personal accountants. (*Id.* ¶ 33).

After discovering the allegedly unlawful scheme, Plaintiff informed Defendants Folsom and Ratts, who were the Interim Superintendent and Assistant Superintendent, respectively, that they, the District, and the Board of Education were violating state law and defrauding the TRS. (Doc. 24 ¶ 35). The complaint would have been forwarded to Defendant Taylor, the Chairman of the Board of Education, by the superintendent. (*Id.* ¶ 36). On April 15, 2024, Folsom and Ratts sent an email to the District's elementary school principal stating that all future communications related to human resources would now be coming from them instead of Plaintiff. (*Id.* ¶ 37). The following day, April 16, 2024, Plaintiff notified Folsom that any employment positions the District intended to fill for the subsequent school year needed to be posted as vacant and asked Folsom for information about vacant positions. (*Id.* ¶ 38). Folsom told Plaintiff that she should not post any vacant positions, a decision Plaintiff alleges was made (1) because the vacant positions had already been promised to "certain retirees" that were "principally Caucasian" and (2) to prevent racial minority candidates from learning about the vacancies. (*Id.* ¶¶ 40–42). District policy and state law require that job vacancies be posted to ensure nondiscrimination in hiring. (*Id.* ¶¶ 28–30).

Ten days later, on April 26, 2024, Folsom and Ratts, at the direction or with the approval of Taylor, told Plaintiff that her job was "on the chopping block" and that she was going to be demoted, which would result in a loss of responsibilities, pay, and prestige. (Doc. 24 ¶¶ 43–45). Folsom and Ratts told Plaintiff that she should start looking for a new job in another school district in light of the anticipated pay cut that would accompany the demotion. (*Id.* ¶ 46). Ratts, who was set to retire at the end of the school year, stated she would likely take over some of Plaintiff's job duties. (*Id.* ¶ 47). Folsom and Ratts, at the direction or with the approval of Taylor, "ostracized" Plaintiff and "froze her out of meetings." (*Id.* ¶¶ 48–49).

Plaintiff sought assistance from an attorney with the Professional Association of Georgia Educators, who informed the District's counsel that Plaintiff could not be fired due to a contract she had previously signed for the 2024–2025 school year. (*Id.* ¶¶ 50–51). Counsel for the District stated that Plaintiff would not be offered a contract for the following school year, 2025–2026, and that he could try to persuade the District to buy out Plaintiff's contract for the 2024–2025 year. (*Id.* ¶¶ 52, 54).

On May 7, 2024, Plaintiff again emailed Folsom, along with the District's principals, stating that vacancies needed to be posted if they intended to fill those positions. (*Id.* ¶ 55). On June 19, 2024, Plaintiff was directed to post the vacancies as part-time positions. (*Id.* ¶ 58). Plaintiff alleges that the posting of these full-time positions as part-time roles served as a "work around" to ensure that primarily White and retiring employees would be the only applicants since "few, if any applicants in the field of education are seeking part-time jobs[.]" (*Id.* ¶ 59). Finally, Plaintiff alleges that recently her mother, who is a return-to-work employee in the District, was the only employee who was not offered a contract renewal. (*Id.* ¶ 60).

### B. Title VII and § 1981 Retaliation Claims Against the District

In Counts I and III, Plaintiff brings retaliation claims under Title VII and 42 U.S.C. § 1981 against the District. (Doc. 24 ¶¶ 61–64, 69–73). Because the retaliation claims do not differ factually or in argument, the Court addresses them as stated in the SAC together. *See Edwards v. Tift Reg'l Health Sys., Inc.*, No. 7:20-CV-3 (WLS), 2022 WL 949897, at *6 (M.D. Ga. Mar. 29, 2022) (noting that the analysis and remedies for retaliation claims under Title VII and

5

§ 1981 are similar, and "courts may apply the same framework when analyzing claims under both statutes"). Title VII prohibits retaliation against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing [thereunder]." 42 U.S.C. § 2000e–3(a). Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens," 42 U.S.C. § 1981(a), and "prohibits an employer from retaliating against an employee in response to the employee's complaint of race-based discrimination." *Goolsby v. City of Monroe*, No. 3:22-CV-82, 2023 WL 5672509, at *9 (M.D. Ga. Sept. 1, 2023), *aff'd*, No. 24-13573, 2025 WL 3013403 (11th Cir. Oct. 28, 2025) (citing *Andrews v. Lakeshore Rehab. Hosp.*, 140 F.3d 1405, 1412–13 (11th Cir. 1998)); *see Foster v. Echols Cnty. Sch. Dist.*, No. 7:23-CV-00089 (WLS), 2024 WL 2979543, at *10 (M.D. Ga. June 13, 2024), *aff'd*, 169 F.4th 1291 (11th Cir. 2026) ("Section 1981 also provides protection from retaliation for opposing practices which violate § 1981 rights."). The same legal standard applies to retaliation claims under both Title VII and § 1981. *See Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1215 (11th Cir. 2008); *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (applying the same three-part test to retaliation claims under § 1981 and Title VII).

To state a prima facie case of retaliation under Title VII or § 1981, Plaintiff must allege that: (1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected conduct. *Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1193–94 (11th Cir. 2016); *Locascio v. BBDO Atlanta, Inc.*, 56 F. Supp. 3d 1356, 1363 (N.D. Ga. 2014).

   *1. Protected Conduct*

As to the first element, Plaintiff must allege that she engaged in protected conduct. Title VII recognizes two forms of statutorily protected conduct. An employee is protected from retaliation if "(1) '[s]he has opposed any practice made an unlawful employment practice by [Title VII]' (the opposition clause) or (2) '[s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]' (the participation clause)." *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1350 (11th Cir. 1999)

6

(quoting 42 U.S.C. § 2000e–3(a)). Here, Plaintiff has not alleged that she engaged in any conduct that could conceivably fall under the participation clause.[2] Thus, any retaliation claim advanced by Plaintiff must be based on the opposition clause.

"An employee engages in protected activity if [s]he opposes an employment practice based on a good faith, reasonable belief that the practice violates Title VII or [§] 1981." *Edwards*, 2022 WL 949897, at \*6 (quoting *Canty v. Fry's Elecs., Inc.*, No. 1:09-CV-3508, 2012 WL 1038611, at \*5 (N.D. Ga. Mar. 27, 2012)). "Such opposition must be conveyed to the employer through a complaint or overt rejection of what the employee believes is an illegal, discriminatory practice." *Id.* (citing *Canty*, 2012 WL 1038611, at \*5). "Thus, an employee may engage in protected activity by 'voicing complaints of [racial] discrimination' to his employer, or by 'refusing to follow a supervisor's order to [engage in a discriminatory practice][.]'" *Locascio*, 56 F. Supp. 3d at 1364 (quoting first *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 715 n.2 (11th Cir. 2002); and then *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 277 (2009)). "There is no requirement that the discriminatory practice opposed by the plaintiff be directed at the plaintiff [her]self, but '[t]he opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual[.]'" *Id.* (citations omitted) (quoting *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir. 1997)).

Further, "[t]o establish 'statutorily protected activity[,]' a plaintiff claiming retaliation for opposing an unlawful employment practice must demonstrate that she believed, in good faith, that the challenged practice was unlawful and that this subjective belief was objectively reasonable in view of the facts, as measured against existing substantive law." *Sanford v. SCA, Inc.*, No. 3:13cv153, 2014 WL 1329277, at \*4 (M.D. Ala. Mar. 28, 2014), (citation modified) (citing *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010)). A plaintiff "need not prove the underlying claim of discrimination . . . so long as she had a reasonable good faith belief that the discrimination existed." *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th

---

[2] Plaintiff alleges that she engaged in protected activity by, among other things, "filing a charge of discrimination with the EEOC[.]" (Doc. 24 ¶¶ 62, 70). However, the SAC does not allege any facts whatsoever regarding the EEOC charge. For instance, Plaintiff does not allege when the charge was filed, whether Defendants knew about the charge, or whether she was targeted for filing the charge. (*See generally* Doc. 24). Simply put, Plaintiff alleges no facts that would implicate the participation clause.

Cir. 1994) (quoting *Tipton v. Canadian Imperial Bank of Com.*, 872 F.2d 1491, 1494 (11th Cir. 1989)). In other words, "the employer's practice, which a plaintiff opposes does not in fact have to be unlawful . . . rather, the employee need only have a reasonable belief that the employer's practices are discriminatory." *Danner v. Sumter Cnty. Bd. of Educ.*, No. 712-CV-02391, 2013 WL 754956, at *4 (N.D. Ala. Feb. 26, 2013); *see Clover*, 176 F.3d at 1351 (holding that the conduct opposed need only be "close enough" to support an objectively reasonable belief of unlawful discrimination).

Finally, "Title VII's protections are not limited to individuals who file formal complaints, but extend to those who voice informal complaints as well." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1311 (11th Cir. 2016) (citing *Rollins v. State of Fla. Dep't of Law Enf't*, 868 F.2d 397, 400 (11th Cir. 1989)). "[T]he statute's protections only reach individuals who explicitly or implicitly communicate[ ] a belief that the practice constitutes unlawful employment discrimination." *Id.* (citation omitted). The relevant question is "whether the employee's communications to the employer sufficiently convey the employee's reasonable concerns that the employer has acted or is acting in an unlawful discriminatory manner." *Reynolds v. Golden Corral Corp.*, 106 F. Supp. 2d 1243, 1254 (M.D. Ala. 1999), *aff'd*, 213 F.3d 1344 (11th Cir. 2000) (quoting *Garcia–Paz v. Swift Textiles, Inc.*, 873 F. Supp. 547, 559–60 (D. Kan. 1995)). So "to establish that a complaint was a protected activity, the employee must 'at the very least, communicate her belief that discrimination is occurring to the employer, and cannot rely on the employer to infer that discrimination has occurred.'" *Pinder v. John Marshall L. Sch., LLC*, 11 F. Supp. 3d 1208, 1263 (N.D. Ga. 2014) (quoting *Demers v. Adams Homes of Nw. Fla., Inc.*, 321 F. App'x 847, 852 (11th Cir. 2009)).

According to the District, Plaintiff at most alleges she complained to the Individual Defendants about a violation of O.C.G.A. § 47-3-141, which provides penalties for defrauding the TRS and has nothing to do with discrimination. (Doc. 25-1 at 6–7). To be protected from retaliation, Plaintiff must have opposed conduct that is unlawful (i.e., racially discriminatory) under Title VII. *See Pinder*, 11 F. Supp. 3d at 1263. "Generalized complaints about unfair treatment absent references to unlawful discrimination, however, do not constitute protected opposition conduct." *Williams v. Coca-Cola Co.*, No. 1:19-CV-3382, 2019 WL 13273269, at *4

8

(N.D. Ga. Oct. 18, 2019), *report and recommendation adopted*, No. 1:19-CV-3382, 2019 WL 13273266 (N.D. Ga. Nov. 22, 2019); *see Coutu v. Martin Cnty. Bd. of Cnty. Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995) (holding that unfair treatment, absent discrimination based on race, sex, or national origin, is not an unlawful employment practice under Title VII, and that a grievance that is void of such allegations does not constitute statutorily protected activity). Here, the Court agrees with the District that Plaintiff's allegation that she told Folsom and Ratts that they and the District were defrauding the TRS through the alleged scheme does not amount to protected activity because, as alleged, Plaintiff did not tell Defendants that she thought the re-hiring practices were racist or violated anti-discrimination laws during this specific encounter. (Doc. 24 ¶ 35). Plaintiff, for her part, does not argue that her opposition to the scheme during this encounter constitutes protected activity nor could she. (*See* Doc. 20 at 9–10). The SAC's allegations show that Plaintiff opposed the re-hiring practice only on the basis that it was illegal under Georgia laws pertaining to the TRS and not under any federal or state anti-discrimination law.

That leaves Plaintiff's April 16, 2024 email to Folsom in which she asked which positions were vacant and whether the District intended to fill them. Plaintiff argues in response to the District's Motion that her email to Folsom "insist[ed] that the District abide by its equal employment opportunity policies by posting the vacancies[,]" which constitutes protected activity. (Doc. 20 at 10). On its face, the SAC's allegation regarding the April 16 email— which email itself is not yet part of the record—does not specifically mention potential racial discrimination. (*See* Doc. 24 ¶ 38 ("On April 16, 2024, Plaintiff asked Folsom which positions were vacant and whether the District intended to fill them because open positions needed to be posted.")). However, Plaintiff, in her role as the Human Resources Director, was responsible for overseeing the District's compliance with hiring policies, which included the posting of vacant job positions. (Doc. 24 ¶¶ 29, 34). The posting of vacant positions was to ensure that vacancies were filled in a manner that avoided discrimination "on the basis of sex, race, religion, national origin, age, or disability." (*Id.* ¶ 28). Both Georgia law and the District's own policies required posting. (*Id.* ¶¶ 28, 30); *see* O.C.G.A. § 20-2-211(d) (providing that school districts must implement hiring practices that "assure nondiscrimination on the basis of sex,

9

race, religion, or national origin[,]" and provide for "the announcement in writing of the availability of all certificated positions within the local school system"). Plaintiff alleges that Folsom told her not to post any vacancies because the vacant positions had already been promised to certain retirees under the TRS scheme, which, as alleged, benefited mostly White retirees, and so that no racial minority candidates could apply for those positions. (*Id.* ¶¶ 41–42).

It is reasonable to infer that by insisting that the District comply with its posting policy, Plaintiff was implying that if the jobs were not posted, the District would be violating equal employment opportunity laws by engaging in unlawful and discriminatory hiring practices as well as violating § 1981 by refusing the extend to minorities the "same opportunity to enter into contracts" as is offered to Whites. *Comcast Corp. v. Nat'l Assoc. of African American-Owned Media*, 589 U.S. 327, 336 (2020). This inference is supported by the allegation that Plaintiff sent a second email to Folsom and the District's school principals about the need for posting vacancies on May 7, 2024. (Doc. 24 ¶ 55). And the allegation that Plaintiff was eventually instructed to post the vacant positions. (*Id.* ¶ 58). Further, Plaintiff was the HR director for the entire school district, and her job responsibilities included ensuring the District's compliance with policies and state law. (Doc. 24 ¶ 34). A supervisor receiving an email regarding compliance with a state-mandated anti-discrimination policy from the employee directly responsible for ensuring such compliance would reasonably recognize that they were being advised of prohibitions against employment discrimination. Based on her subjective belief that mostly White retirees were being rehired and that vacant jobs had already been promised to those retirees, it was objectively reasonable for Plaintiff to believe that a practice of not posting the vacancies was discriminatory. *See Clover*, 176 F.3d at 1351 (holding that the conduct opposed need only be "close enough" to support an objectively reasonable belief of unlawful discrimination).

The District argues that Plaintiff has not plausibly alleged that its rehiring practices were implemented in a racially discriminatory manner because she has not alleged facts showing how the practice (i.e, the alleged scheme) benefited mostly White employees. (Doc. 25-1 at 7). The District points out, by way of example, that Plaintiff neither provides

statistics comparing the racial demographics of retirees for the relevant years nor alleges that a non-White retiree was denied reemployment. (*Id.*) As discussed above, however, Plaintiff does not have to prove the underlying claim of discrimination "so long as she had a reasonable good faith belief that the discrimination existed." *Meeks*, 15 F.3d at 1021. And the Court, at this stage of the case and without the benefit of testimony and other evidence, must rely on Plaintiff's allegations and draw every reasonable inference in her favor based on those allegations. Those allegations are, to be sure, somewhat general in nature, and raise some questions as to what the specific evidence will ultimately show. But general allegations of fact are what Plaintiff is required to present at this juncture under Rule 8. These allegations are sufficient to state a claim.

Indeed, the Court cannot say, as a matter of law, without more evidence and context, that a school district receiving multiple emails from its HR director insisting on compliance with policies aimed to ensure nondiscriminatory hiring practices would not be on notice that such insistence related at least in part to preventing unlawful discrimination. As discussed above, the allegations of the disparate impact of the alleged scheme, coupled with Plaintiff's insistence on posting job vacancies to prevent such disparate impact, are enough to allow an inference that Plaintiff's statements related to job posting constituted "protected activity," at least to the liberal pleading standards of Rule 8. This issue will be ripe for re-evaluation based on a more precise evidentiary record at summary judgment. But based on the factual summary alleged in the SAC, the Court finds Plaintiff sufficiently alleged the first element.

*2. Adverse Employment Action*

As to the second element, Plaintiff must allege that she suffered an adverse employment action. An action is adverse in the retaliation context if it is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006) ("*Burlington Northern*"); *see Copeland v. Ga. Dep't of Corr.*, 97 F.4th 766, 782 (11th Cir. 2024); *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 861 (11th Cir. 2020). In applying this objective standard to Plaintiff's allegations, the Court looks at the surrounding circumstances and context. *Id.* at 69 ("We phrase the standard in general terms because the significance of any given act of

11

retaliation will often depend upon the particular circumstances. Context matters."). Here, Plaintiff alleges that the District retaliated against her by (1) excluding her from meetings, (2) not speaking to her, (3) removing her job duties, (4) telling her that her job was eliminated and that she should leave the school district, (5) threatening the non-renewal of her employment contract, and (6) demoting her. (Doc. 24 ¶¶ 63, 71). Plaintiff contends that these actions resulted in her constructive discharge. (*Id.*); (Doc. 20 at 11). She also alleges that the District retaliated against her by refusing to renew her mother's employment contract. (Doc. 24 ¶¶ 60, 63, 71).

The District argues that the alleged demotion Plaintiff points to never came to fruition, and a mere threat of a future demotion is not actionable. (Doc. 25-1 at 10 (citing *Smith v. City of Ft. Pierce, Fla.*, 565 F. App'x 774, 778 (11th Cir. 2014)). This argument is easily rejected for two reasons. First, as Plaintiff points out, the Eleventh Circuit's decision in *Smith v. City of Ft. Pierce, Fla.* does not stand for the proposition that a threat of termination, without an actual termination, can never constitute adverse action. (Doc. 20 at 11–12). In *Smith*, the plaintiff claimed that she was threatened with termination when the city of Fort Pierce discussed consolidating some of its departments, which would result in the elimination of plaintiff's position. 565 F. App'x at 778. But the consolidation never happened, and there was no express threat of termination. *Id.* The facts alleged here are distinguishable from *Smith* in that there were two express threats to Plaintiff's employment: (1) when Ratts and Folsom told Plaintiff on April 26, 2024, that her job was "on the chopping block" and she was going to be demoted, (Doc. 24 ¶ 43), and (2) when counsel for the District told Plaintiff's attorney that Plaintiff's contract would not be renewed for the following year. (*Id.* ¶ 52).

And second, the District's argument mischaracterizes the nature of Plaintiff's allegations. Plaintiff alleges that Defendants told her she was going to be demoted, and that the only reason she was not demoted was because she had already signed her contract for the upcoming school year. (Doc. 24 ¶¶ 43, 51). Importantly, after Plaintiff's attorney notified counsel for the District of its contractual obligation to keep Plaintiff in its employ, the District, through its counsel, responded that Plaintiff's contract would not be renewed for the subsequent year. (*Id.* ¶ 52). This was not merely a threat of non-renewal but an actual decision

12

not to renew Plaintiff's contract at the earliest opportunity, a decision which can constitute an adverse employment action regardless of when it takes effect. *See Thomas v. CVS/Pharmacy*, 336 F. App'x 913, 915 (11th Cir. 2009) (per curiam) ("An adverse employment action is deemed to have occurred when the employer made the final decision and communicated it to the employee." (quoting *Del. State Coll. v. Ricks*, 449 U.S. 250, 258, 261–62 (1980))). And the Eleventh Circuit has held that "[a] School District's refusal to renew [a plaintiff's] contract [is] clearly an adverse employment action." *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1242 (11th Cir. 2016).

Even if the Court were to construe Ratts and Folsom's communication to Plaintiff and the comment made by the District's counsel as mere threats, other courts in this Circuit have found that a threat of termination can constitute an adverse employment action. *See Huddleston v. Atlanta*, No. 1:23-CV-4552, 2026 WL 934198, at *5 (N.D. Ga. Feb. 6, 2026), *report and recommendation adopted sub nom. Huddleston v. Metro. Atlanta Rapid Transit Auth.*, No. 1:23-CV-04552, 2026 WL 910223 (N.D. Ga. Mar. 30, 2026) ("[T]he threat of termination can constitute an adverse action for purposes of a retaliation claim. A reasonable employee might be dissuaded from filing a complaint or engaging in protected activity when doing so could mean the loss of her job and the associated pay and benefits and could impact her career."). And in *Monaghan v. Worldpay US, Inc.*, the Eleventh Circuit applied similar reasoning to threats of termination by a supervisor that occurred in connection with other misconduct to conclude that the plaintiff suffered an adverse action. 955 F.3d 855, 863 (11th Cir. 2020) ("These statements from a supervisor—which threatened both termination and possible physical harm—'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" (quoting *Burlington Northern*, 548 U.S. at 70–72)).

As noted above, Plaintiff alleges that she was subject to other retaliatory actions in addition to being threatened with a demotion and termination—for example, she was excluded from meetings, subjected to the proverbial cold shoulder by other employees, had some of her job duties removed, which resulted in a loss of pay and prestige, and was constructively

terminated through these and other actions.[3] (Doc. 24 ¶¶ 63, 67). Standing alone, these other alleged actions might well be considered trivial harms that would not rise to the level of an adverse action. *See Johnson v. AutoZone, Inc.*, 768 F. Supp. 2d 1124, 1154 (N.D. Ala. 2011) ("Trivial harms and petty slights do not constitute adverse employment actions." (quoting *Burlington Northern*, 548 U.S. at 68)). But considering the alleged actions together and construing the allegations in the light most favorable to Plaintiff, the Court finds that the District's actions might well have dissuaded a reasonable employee from engaging in statutorily protected activity. Thus, the Court finds that Plaintiff has sufficiently alleged adverse action for the purposes of the retaliation claims.

### 3. *Causation*

As to the third element, Plaintiff must allege that the adverse action she suffered was causally related to her protected conduct. To establish causation, Plaintiff must show "that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." *Shannon v. BellSouth Telecomm., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002); *see Bowers v. Bd. of Regents of Univ. Sys. of Ga.*, 509 F. App'x 906, 911 (11th Cir. 2013); *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1457 (11th Cir. 1998) ("To establish the causal relation element . . . , [Plaintiff] need only show 'that the protected activity and the adverse action are not completely unrelated.'" (quoting *Meeks v. Comput. Assocs. Intern.*, 15 F.3d 1013, 1021 (11th Cir. 1994))). "If a form of protected activity and subsequent adverse action occur 'very close' in time to one another, a jury may infer that the decisionmaker knew of the protected activity and that it served as one motivation for the adverse action, establishing causation." *Copeland*, 97 F.4th at 783 (quoting *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1182 (11th Cir. 2010)); *see Bechtel Constr. Co. v. Sec'y of Labor*, 50 F.3d 926, 935 (11th Cir. 1995) ("Proximity in time is sufficient to raise an inference of causation."); *Robinson v. LaFarge N. Am., Inc.*, 240 F. App'x 824, 829 (11th Cir. 2007) (per curiam) (holding that causation was sufficiently alleged where adverse action occurred about two months after protected activity).

---

[3] The Court observes that Plaintiff's allegations regarding her separation from the District are vague and again raise some questions as to what the specific evidence will show. However, as the Court noted in its analysis of the first element, general allegations of fact are all that Plaintiff is required to present under Rule 8 at this stage of litigation.

Here, Plaintiff alleges that she first raised the issue of vacancy posting with Folsom on April 16, 2024. (Doc. 24 ¶ 38). Ten days later, on April 26, 2024, Folsom and Ratts told Plaintiff that Plaintiff was going to be demoted. (*Id.* ¶ 43). At some point between April 26 and June 19, 2024, the District's counsel informed Plaintiff that her contract would not be renewed at the earliest opportunity. (*Id.* ¶¶ 50–58). Plaintiff further alleges she was subjected to "a pattern of antagonism" almost immediately after she made complaints about the fraudulent re-hiring scheme and the District's posting of job vacancies. (Doc. 20 at 14). And she alleges that the Defendant Taylor, the Chairman of the Board of Education, was made aware of her complaints. (Doc. 24 ¶¶ 36, 39). The Court thus finds that the time frame alleged in the SAC establishes sufficient temporal proximity to show a causal connection between the alleged adverse actions and Plaintiff's protected activity.[4]

In sum, the Court finds that the facts alleged in the SAC, taken as true and construed in Plaintiff's favor, are sufficient to state a plausible retaliation claim under Title VII and § 1981, in conformity with the liberal pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. The District's Motion to Dismiss is **DENIED** with respect to Plaintiff's retaliation claims in Counts I and III.

### C. Section 1981 Retaliation Claim Against the Individual Defendants

The Individual Defendants move to dismiss Plaintiff's § 1981 claim in Count III, asserting the defense of qualified immunity.[5] (Doc. 26-1 at 13–16). "The doctrine of qualified

---

[4] In its discussion of the third element, the District focus on Plaintiff's allegation regarding its non-renewal of her mother's employment contract to argue that no temporal proximity exists to suggest a retaliatory motive. (Doc. 25-1 at 12). However, the Court has found that Plaintiff's other allegations establish the adverse action element, and therefore, need not determine whether the non-renewal of the mother's contract constitutes an adverse action.

[5] The Individual Defendants also contend that Plaintiff's § 1981 claims against them should be dismissed because she does not assert that the claims are brought under 42 U.S.C. § 1983. (Doc. 26-1 at 5–6); *see Davis v. Locke*, 936 F.2d 1208, 1212 (11th Cir. 1991) ("Section 1983 provides a federal remedy for the deprivation of rights, privileges or immunities protected by the constitution or the laws of the United States."). This argument is without merit for two reasons. First, although she does not specifically mention § 1983 as the method by which she asserts her § 1981 claim, Plaintiff expressly references § 1983 in the SAC's claims for relief. (Doc. 24 at 13). Even still, there is no requirement that she expressly invoke that provision to state a claim under § 1981. *See Ray v. Comm'r, Ala. Dep't of Corr.*, 915 F.3d 689, 693 n.2 (11th Cir. 2019); *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (holding that "no heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim"). And second, Defendants admit that earlier iterations of Plaintiff's complaint did in fact invoke § 1983, meaning Defendants were on notice that the § 1981 claims were brought pursuant to § 1983. (Doc. 26-1 at 5–6).

immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* Although qualified immunity is typically addressed at the summary judgment phase, a defendant may raise it in a motion to dismiss. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002) (citing *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001)).

### 1. *Discretionary Function*

"To be eligible for qualified immunity, the official must first establish that he was performing a discretionary function at the time the alleged violation of federal law occurred." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). An official performs a discretionary function when that officer was "performing a legitimate job-related function (that is, pursuing a job-related goal) . . . through means that were within his power to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265–66 (11th Cir. 2004) (citing *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1186 n.17 (11th Cir. 1994)). The nature of a job-related function should be examined "at a general level rather than in a specific application[.]" *Smart v. England*, 93 F.4th 1283, 1288 (11th Cir. 2024) (quoting *Holloman*, 370 F.3d at 1288).

Here, the Individual Defendants contend that their actions of which Plaintiff complains were all personnel-related decisions that fall within their discretionary duties as chair of the School Board, superintendent, and assistant superintendent. (Doc. 26-1 at 14 n.5 (citing *Donald v. Norris*, 131 F.4th 1255, 1263 (11th Cir. 2025)). The Court must look to the general nature of Defendants' actions, "temporarily putting aside the fact that [those actions] may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Holloman*, 370 F.3d at 1266. The Court agrees with Defendants that reassigning job duties, determining which

employees should attend meetings, notifying employees of future demotions, and the non-renewal of employment contracts "if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of [Defendants'] discretionary duties." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) (quoting *In re Allen*, 106 F.3d 582, 594 (4th Cir. 1997)). As such, Defendants were performing legitimate job-related functions, with respect to their alleged retaliatory actions.[6] The Court, therefore, finds that Defendants, as alleged, were performing a discretionary function.

### 2. *Qualified Immunity Analysis*

Because the Individual Defendants have established that they were acting within their discretionary authority, the burden now shifts to Plaintiff to establish that qualified immunity is inappropriate. *Richmond v. Badia*, 47 F.4th 1172, 1179 (11th Cir. 2022). To meet her burden, Plaintiff must show that: (1) "the official's alleged conduct violated a constitutionally protected right[,]" and (2) "the right was clearly established at the time of the misconduct." *Id.* This requires the Court to conduct a two-part analysis. First, the Court "consider[s] whether, taken in the light most favorable to [Plaintiff], the facts alleged show [the Individual Defendants'] conduct violated a constitutional right." *Perez v. Suszczynski*, 809 F.3d 1213, 1218 (11th Cir. 2016). Second, "[i]f a constitutional right would have been violated under [Plaintiff's] version of the facts," the Court "must then determine 'whether the right was clearly established.'" *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009)).

#### a. **Violation of § 1981**

As discussed above, to state a claim for retaliation under § 1981, Plaintiff must allege that: (1) she engaged in statutorily protected conduct, (2) she suffered an adverse employment action, and (3) the adverse action was causally related to the protected conduct. *Bryant v. Jones*, 575 F.3d 1281, 1307–08 (11th Cir. 2009). "[I]ndividual liability may exist under [§] 1981 as a result of an individual's interference or participation in the allegedly unlawful act." *Lake v. 7037 Rest., LLC*, No. 1:19-CV-5455, 2020 WL 13933562, at *2 (N.D. Ga. Oct. 2, 2020) (citing first

---

[6] The Court notes that Plaintiff does not dispute that Defendants were acting within their discretionary authority. (*See* Doc. 20 at 16–17).

*Faraca v. Clements*, 506 F.2d 956, 959-60 (5th Cir. 1975); and then *Burstein v. Emtel, Inc.*, 137 F. App'x 205, 208 (11th Cir. 2005)). The Court has already determined that Plaintiff has sufficiently alleged the three elements of her retaliation claim with respect to the District but now must determine whether she has done so as to Ratts, Folsom, and Taylor. Because each Defendant is entitled to an independent qualified immunity claim, the Court must evaluate each of their claims, "considering only the actions and omissions in which that particular defendant engaged." *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018).

For many of the same reasons, the Court also finds that Plaintiff has plausibly alleged that Folsom, as the interim superintendent, and Ratts, as the assistant superintendent, retaliated against her in violation of § 1981. As explained in the preceding section addressing the retaliation claim against the District, the SAC identifies the protected activity Plaintiff engaged in—namely, insisting on compliance with policies aimed to ensure nondiscriminatory hiring practices. Further, Plaintiff has plausibly alleged that Ratts and Folsom knew of her protected activity because she made her complaints to them, and that Ratts and Folsom authorized and directly participated in the adverse employment actions to demote and ultimately terminate her. (*See* Doc. 24 ¶¶ 37–38, 43, 46, 48, 53). Likewise, Plaintiff plausibly alleges that Taylor, as chairman of the Board of Education, had knowledge of Plaintiff's protected conduct, (*id.* ¶ 39), and that the retaliatory actions taken against Plaintiff were made at Taylor's direction or with his approval. (*Id.* ¶¶ 45, 49, 53).

As for the third element, Plaintiff has sufficiently alleged that the adverse actions taken against her were casually related to her protected conduct. As discussed above, this is true given the close temporal proximity between Plaintiff's complaint regarding the posting of job vacancies and the commencement of Ratts and Folsom's retaliatory actions in excluding her from meetings, directing other employees to refrain from speaking to her, reassigning her job duties, and constructively terminating her through these actions—all of which were taken at the direction or with the approval of Taylor. (*See* Doc. 24 ¶¶ 38–49, 53). In sum, construing the allegations in the light most favorable to Plaintiff, the Court concludes that Plaintiff has plausibly alleged that the Individual Defendants violated § 1981 by retaliating against her for objecting to the District's unlawful race discrimination.

### b. Clearly Established Law

Having found that Plaintiff has plausibly alleged that the Individual Defendants unlawfully retaliated against her, the Court must determine whether they violated clearly established law. "An official's conduct violates clearly established law when 'the contours of [the] right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Echols v. Lawton*, 913 F.3d 1313, 1323 (11th Cir. 2019) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). There are three ways a plaintiff can show that a right was clearly established: "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Perez*, 809 F.3d at 1222 (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291–92 (11th Cir. 2009)). "The 'salient question' is whether the state of the law at the time of the incident gave [Defendants] 'fair warning' that [their] conduct was unlawful." *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). The second and third methods are generally known as "obvious clarity" cases. *See Vinyard v. Wilson*, 311 F.3d 1340, 1350–51 (11th Cir. 2002). "They exist where the words of the federal statute or constitutional provision at issue are 'so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful,' or where the case law that does exist is so clear and broad (and 'not tied to particularized facts') that 'every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted.'" *Gaines v. Wardynski*, 871 F.3d 1203, 1209 (11th Cir. 2017) (quoting *Vinyard*, 311 F.3d at 1350–51).

Here, Plaintiff uses the second method, pointing to the general principle that it is unlawful to retaliate against an employee for making race-based complaints. (Doc. 20 at 16). Defendants, in their motion to dismiss, make two arguments that the law was not clearly established. First, they assert that neither the Eleventh Circuit nor the Supreme Court has held that a government official violates § 1981 by taking an adverse employment action against somebody other than the person who engaged in the statutorily protected activity. (Doc. 26-1 at 15). And second, they contend more generally that their alleged acts were not unlawful. (*Id.*)

19

As to Defendants' first argument, which relates to Plaintiff's allegation that Defendants retaliated against her by refusing to renew her mother's employment contract, the Court agrees. Defendants are correct that neither the Eleventh Circuit nor the Supreme Court have recognized a third-party retaliation claim for an adverse employment action taken against someone other than the plaintiff-employee. (Doc. 26-1 at 15). Plaintiff does not point to any binding precedent which would establish a cause of action for third-party retaliation, and the Court has found none. *See Allen-Sherrod ex rel. Stallworth v. Henry Cnty. Sch. Dist.*, No. CIVA 1:05CV0600, 2007 WL 1020843, at *3 (N.D. Ga. Mar. 27, 2007), *aff'd sub nom. Allen-Sherrod v. Henry Cnty. Sch. Dist.*, 248 F. App'x 145 (11th Cir. 2007) (citing cases to show that courts have held that a claim for third-party retaliation is not actionable under § 1981 or other similar retaliation statutes). Therefore, to the extent Defendants' non-renewal of Plaintiff's mother's employment contract could be seen as retaliation against Plaintiff, the law was not clearly established.

As to Defendants' second argument, the Court has already found that, as alleged, Defendants' actions were retaliatory and unlawful. While the Court acknowledges that Plaintiff's § 1981 claim is different from the typical § 1981 retaliation claim in that it alleges retaliation based on Defendants' alleged discrimination against others, rather than against herself, this distinction is immaterial. *See Tucker v. Talladega City Schs.*, 171 F. App'x 289, 294 (11th Cir. 2006) ("A plaintiff may bring a § 1981 claim not only for racial discrimination, but also for retaliation due to his opposition to race discrimination." (citing *Pinkard v. Pullman-Standard*, 678 F.2d 1211, 1229 (5th Cir. Unit B 1982))).[7] A retaliation claim under § 1981 "includes retaliation for a plaintiff's opposition to race discrimination, whether or not he personally is the victim of that race discrimination." *Id.* at 295; *see Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1007 (11th Cir. 1997) (noting that plaintiff employees who were retaliated against when they refused to participate in their employer's discrimination against non-White customers could proceed with a retaliation claim under § 1981(b)).

---

[7] Decisions of Unit B of the former Fifth Circuit, even those made after October 1, 1981, are binding precedent in the Eleventh Circuit. *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

It is well-established in this Circuit that race-based discrimination in employment is prohibited by § 1981. *See Foster v. Echols Cnty. Sch. Dist.*, No. 7:23-CV-00089 (WLS), 2024 WL 2979543, at \*14 (M.D. Ga. June 13, 2024), *aff'd*, 169 F.4th 1291 (11th Cir. 2026) (collecting cases). It is also well-established that retaliating against an employee for objecting to or complaining about racial discrimination is unlawful under § 1981. *See, e.g., Bryant v. Jones*, 575 F.3d 1281 (11th Cir. 2009); *Whitcomb v. Sumter Cnty. Bd. of Educ.*, 453 F. App'x 879, 881 (11th Cir. 2011) ("We have clearly established a person's right to be free from retaliation after complaining of racial discrimination."); *Martin v. Fin. Asset Mgmt. Sys., Inc.*, 959 F.3d 1048, 1053 n.3 (11th Cir. 2020). Based on this principle, the Court finds that it would be clear to every reasonable government official that to demote, terminate, or otherwise retaliate against an employee who objects to or opposes racial discrimination would violate federal law. For this reason, the Court finds that Plaintiff has sufficiently alleged that the Individual Defendants violated clearly established law based on general case principles. This finding is limited to Defendants' arguments based on the pleadings alone; not upon summary judgment or other finding upon evidence in the Record. Accordingly, the Individual Defendants' motion to dismiss Plaintiff's § 1981 retaliation claim based on qualified immunity is **DENIED**, without prejudice.[8]

### D. Hostile Work Environment Claims

In Count II, Plaintiff brings a claim of retaliatory hostile work environment under Title VII against the District. (Doc. 24 ¶¶ 65–68). "Title VII prohibits the creation of a hostile work environment in retaliation for an employee's engagement in protected activity." *Tonkyro v. Sec'y, Dep't of Veterans Affs.*, 995 F.3d 828, 835 (11th Cir. 2021) (citing *Gowski v. Peake*, 682 F.3d 1299, 1312 (11th Cir. 2012), *abrogated on other grounds by Monaghan v. Worldpay US, Inc.*, 955 F.3d 855 (11th Cir. 2020)). "[R]etaliatory hostile work environment claims, like retaliation claims based on discrete acts, prevail if the conduct complained of 'well might have dissuaded a reasonable

---

[8] Although entitlement to qualified immunity is usually made with the benefit of caselaw with facts which are materially similar to the case at bar, *see Vinyard v. Wilson*, 311 F.3d 1340, 1351 (11th Cir. 2002), the Court is satisfied that at the motion to dismiss stage, Plaintiff has sufficiently alleged a violation of clearly established law relying on the statutory text and general principles.

worker from making or supporting a charge of discrimination.'" *Id.* at 836 (quoting *Monaghan*, 955 F.3d at 862–63).

The Court has already found that the alleged adverse actions Plaintiff suffered—exclusion from meetings, receiving the cold shoulder from other employees, threats of demotion and termination, removal of job duties resulting in a loss of pay and prestige—were enough to dissuade a reasonable employee from making or supporting a charge of discrimination. Thus, the Court finds that the SAC sufficiently alleges a claim for hostile work environment under Title VII. The District's Motion to Dismiss is **DENIED** with respect to Plaintiff's hostile work environment claim in Count II.

In Count IV, Plaintiff brings a claim for retaliatory hostile work environment under § 1981 against all Defendants. Like Title VII, § 1981 also recognizes a claim for hostile work environment, but the claim must be based on allegations of a racially hostile environment. *See, e.g., Pate v. Chilton Cnty. Bd. of Educ.*, 853 F. Supp. 2d 1117, 1129 (M.D. Ala. 2012) (noting that "the classes of persons protected by [§ 1981] are limited to racial or ethnic discrimination"). To succeed on a hostile work environment claim under § 1981, Plaintiff must prove: "(1) she belongs to a protected class, (2) she experienced unwelcome harassment, (3) the harassment was based on her race, (4) the harassment was sufficiently severe or pervasive to alter the terms of her employment, and (5) employer responsibility under a theory of vicarious or direct liability." *Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1334 (11th Cir. 2023) (citing *Smelter v. S. Home Care Servs. Inc.*, 904 F.3d 1276, 1283 n.3, 1284 (11th Cir. 2018)).

Plaintiff's claim fails on the first and third elements because she does not allege she is a member of a protected class or that the alleged harassment she experienced was based on her race. The SAC makes no mention of Plaintiff's race. Thus, Plaintiff fails to allege a hostile work environment claim under § 1981. Defendants' Motions to Dismiss are **GRANTED** with respect to Plaintiff's hostile work environment claim in Count IV.

### E. Georgia Whistleblower Act Retaliation

In Count V, Plaintiff brings a claim under the Georgia Whistleblower Act (GWA) against the District. (Doc. 24 ¶¶ 79–82). The GWA prohibits a public employer from retaliating "against a public employee for disclosing a violation of or noncompliance with a

22

law, rule, or regulation to either a supervisor or a government agency, unless the disclosure was made with knowledge that the disclosure was false or with reckless disregard for its truth or falsity." O.C.G.A. § 45-1-4(d)(2). Employers are also prohibited from retaliating against an employee for "objecting to, or refusing to participate in, any activity, policy, or practice of the public employer that the public employee has reasonable cause to believe is in violation of or noncompliance with a law, rule, or regulation." *Id.* § 45-1-4(d)(3). The GWA defines "retaliation" as

> the discharge, suspension, or demotion by a public employer of a public employee or any other adverse employment action taken by a public employer against a public employee in the terms or conditions of employment for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or government agency.

*Id.* § 45-1-4(a)(5). To establish a claim for retaliation under the GWA, Plaintiff must show: "(1) the employer is a public employer; (2) the employee disclosed a violation of or noncompliance with a law, rule, or regulation to a supervisor or agency; (3) the employee experienced retaliation; and (4) there is a causal relation between the disclosure and the adverse employment decision." *Lamar v. Clayton Cty. Sch. Dist.*, 605 F. App'x 804, 806 (11th Cir. 2015) (citing *Forrester v. Ga. Dep't of Human Servs.*, 708 S.E.2d 660, 666 (Ga. Ct. App. 2011)). There is no dispute that Plaintiff was employed by a public employer. Thus, the Court addresses the remaining elements.

### 1. *Protected Disclosure or Objection*

As noted above, the GWA prohibits employers from retaliating against an employee for either disclosing a violation or noncompliance with a law, rule, or regulation, or for objecting to or refusing to participate in a practice the employee believes is in violation of a law, rule, or regulation. O.C.G.A. § 45-1-4(d)(2)–(3). Here, Plaintiff alleges that she engaged in both protected activities by (1) disclosing a violation of O.C.G.A. § 47-3-141 (the alleged scheme to defraud the TRS) to her supervisors, and (2) objecting to or refusing to participate in the "unlawful direction" that the job vacancies not be posted. (Doc. 20 at 18–19).

As to Plaintiff's disclosure of the alleged scheme to defraud the TRS, the Parties disagree over the meaning of § 47-3-141 and what it prohibits. (*See* Doc. 25-1 at 15–16 & Doc. 20 at 19–20). The District argues that Plaintiff's disclosure of alleged violations of

23

§ 47-3-141 does not constitute protected activity because the District did not in fact defraud the TRS, and Plaintiff's misunderstanding of the statute makes her objection to the alleged scheme objectively unreasonable. (Doc. 25-1 at 15–16). Plaintiff, on the other hand, maintains that the District violated the statute by allowing retirees to return to work in TRS covered positions and falsely certifying that there were no agreements between the District and the retirees it was rehiring. (Doc. 20 at 19–20). Whether the District did in fact violate § 47-3-141 is immaterial because the GWA only requires that Plaintiff disclose a violation of a law, and that such disclosure "was [not] made with knowledge that the disclosure was false or with reckless disregard for its truth or falsity." O.C.G.A. § 45-1-4(d)(2); *see Jordan v. City of Waycross, Ga.*, No. 5:17-CV-33, 2018 WL 4089206, at *10 (S.D. Ga. Aug. 27, 2018) ("The language of [§ 45-1-47(d)(2)] shows that a plaintiff need not be right that the defendant committed a violation, but he cannot find protection in the statute if his disclosure was knowingly false[,] or made with reckless disregard for the truth[.]"). Plaintiff sufficiently alleges that she disclosed a violation of § 47-3-141 to her supervisors, Ratts and Folsom. (Doc. 24 ¶¶ 15, 35–36); (*see id.* ¶ 35 ("Plaintiff informed Folsom and Ratts that they, [the District], and the [Board of Education], were violating [] § 47-3-141 by making Return-to-Work provisions for retiring employees and promising them positions in advance of retirement, and that they were defrauding the TRS.")). And viewing the allegations in Plaintiff's favor, the Court cannot say that this disclosure was made falsely or recklessly. As such, the Court finds that Plaintiff's disclosure of alleged violations of state law constitutes a protected disclosure under the GWA.

As to Plaintiff's objection to the non-posting of job vacancies, the District argues that this activity was not protected because Plaintiff's belief that the non-posting was unlawful was not reasonable, her objection constitutes a complaint about noncompliance with internal policies, and an objection to violations of unspecified equal employment opportunity laws is insufficient. (Doc. 25-1 at 13–14). The Court addresses each argument in turn.

First, the Court has already found Plaintiff's belief that the District's practice of not posting job vacancies was discriminatory to be objectively reasonable based on her belief that mostly White retirees were being rehired and that vacant jobs had already been promised to those retirees. Second, while it is true that complaints arising under internal policies are not

protected by the GWA, *see Coward v. MCG Health, Inc.*, 802 S.E.2d 396, 400 (Ga. Ct. App. 2017), Plaintiff points to a specific provision of Georgia law which requires the District to implement hiring practices that "assure nondiscrimination on the basis of sex, race, religion, or national origin[,]" and provide for "the announcement in writing of the availability of all certificated positions within the local school system[.]" O.C.G.A. § 20-2-211(d); (*see* Doc. 24 ¶ 30 (citing *id.*)). Thus, as alleged, the District's noncompliance with its own policies may constitute a violation of state law. Third, the Court has found no requirement that Plaintiff name the specific code section she believed the District violated when making her complaint to receive protection under the GWA. *See Jordan*, 2018 WL 4089206, at *10; *Coward*, 802 S.E.2d at 400 ("[W]e need not determine what terminology is required to trigger the protections of the Whistleblower Statute, nor do we believe that the statute requires specific magic words."). Thus, the Court finds Plaintiff had reasonable cause to believe that the non-posting of vacancies was in violation of equal employment opportunity laws, as applied to the District through state law. And therefore, Plaintiff's objection to the District's noncompliance with its posting policy was a protected activity under the GWA.

In sum, the Court finds that Plaintiff sufficiently alleges that her disclosure regarding the alleged TRS scheme and her objection to the non-posting of job vacancies were protected under the GWA. Thus, Plaintiff has sufficiently alleged the second element of her GWA retaliation claim.

### 2. *Adverse Employment Action*

The GWA prohibits retaliation in the form of "discharge, suspension, or demotion . . . or any other adverse employment action[.]" O.C.G.A. § 45-1-4(a)(5). The Georgia Court of Appeals has defined the phrase "any other adverse employment action" to mean an "employment action analogous to or of a similar kind or class as 'discharge, suspension, or demotion.'" *Franklin v. Pitts*, 826 S.E.2d 427, 436 (Ga. Ct. App. 2019). "The Title VII standard for adverse employment action provides guidance." *Anderson v. Sumter Cnty. Sch. Dist.*, 449 F. Supp. 3d 1329, 1344 (M.D. Ga. 2020) (citing *Franklin*, 826 S.E.2d at 437). The Title VII standard requires that "an employee must show that [s]he suffered a serious and material change in the terms, conditions, or privileges of h[er] employment." *Id.* (quoting

*Franklin*, 826 S.E.2d at 437); *see Walker v. Indian River Transp. Co.*, 741 F. App'x 740, 749 (11th Cir. 2018)). For the same reasons discussed in the analysis of the Title VII and § 1981 claims, the Court finds that Plaintiff has sufficiently alleged a demotion and termination, which constitute adverse employment actions for the purposes of this claim. Thus, Plaintiff sufficiently alleges the third element of a GWA retaliation claim.

### 3. *Causation*

"The causation element in a whistleblower case 'is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" *Albers v. Ga. Bd. of Regents of Univ. Sys. of Ga.*, 766 S.E.2d 520, 524 (Ga. Ct. App. 2014) (quoting *Freeman v. Smith*, 750 S.E.2d 739, 743 (Ga. Ct. App. 2013)). "All that is needed is a 'showing that the decision-maker was aware of the protected disclosure and that the disclosure and action were not wholly unrelated.'" *Anderson*, 449 F. Supp. 3d at 1344 (quoting *Forrester*, 708 S.E.2d at 668). And even "mere temporal proximity between an employer's knowledge of protected activity and adverse employment action" may be "sufficient evidence of causality to establish a prima facie case." *Forrester*, 708 S.E.2d at 669 (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).

Here, Plaintiff alleges that the Individual Defendants were aware of her protected disclosures. (Doc. 24 ¶¶ 35–36, 38–39). Plaintiff first alerted Ratts and Folsom (and Taylor through Folsom as the interim superintendent) of the alleged scheme to defraud the TRS, in violation of state law, in April of 2024. (*Id.* ¶¶ 35–36). Shortly thereafter, Plaintiff raised the issue of vacancy posting with Folsom (and Taylor through Folsom) on April 16, 2024. (*Id.* ¶¶ 38–39). Then, over the course of just a few weeks, Plaintiff alleges she was subjected to "a pattern of antagonism" which included Folsom and Ratts removing her job duties, (*id.* ¶ 37); telling Plaintiff her job was on the "chopping block" and that she was going to be demoted, (*id.* ¶ 43); ostracizing and excluding Plaintiff from meetings, (*id.* ¶ 48); and causing other employees to stop speaking to Plaintiff. (*Id.* ¶ 81). Most significantly, at some point between April 26 and June 19, 2024, the District's counsel informed Plaintiff that her contract would not be renewed at the earliest opportunity. (*Id.* ¶¶ 50–58). The "temporal proximity" between Plaintiff's alleged protected activities and the aforementioned adverse actions, namely the

26

decision to demote Plaintiff, is sufficient, at this stage in the proceedings, to plead a causal relationship for the purpose of Plaintiff's GWA retaliation claim. *See Jones v. Bd. of Regents*, 585 S.E.2d 138, 144 (Ga. Ct. App. 2003) (finding circumstantial evidence of retaliation when defendant requested plaintiff's resignation two months after plaintiff's protected whistleblower activity); *Anderson*, 449 F. Supp. 3d at 1344 (finding close temporal proximity between plaintiff's alleged protected activities over the course of the 2017–2018 school year and her constructive discharge in March of 2018). Thus, Plaintiff has sufficiently alleged the fourth element of a GWA retaliation claim.

In sum, the Court finds that the facts alleged in the SAC, taken as true and construed in Plaintiff's favor, are sufficient to state a plausible retaliation claim under the Georgia Whistleblower Act. Accordingly, the District's Motion to Dismiss is **DENIED** with respect to Plaintiff's whistleblower retaliation claim in Count V.

### F.  Intentional Infliction of Emotional Distress

In Count VI, Plaintiff brings a state law claim for intentional infliction of emotional distress against the Individual Defendants. (Doc. 24 ¶¶ 83–87). Plaintiff alleges that the Individual Defendants' retaliatory actions of freezing her out of meetings, causing other employees to stop speaking to her, removing her job duties, telling her that her job was eliminated, not renewing her employment contract for the following school year, demoting her, telling her to leave the school district, refusing to renew her mother's contract, and constructively terminating her caused severe emotional distress. (Doc. 24 ¶ 86). The Individual Defendants move to dismiss, arguing that Plaintiff fails to state a claim, and alternatively, that they are entitled to official immunity because Plaintiff sues them in their individual capacities. (Doc. 26-1 at 16–18).

#### 1.  *Official Immunity*

The doctrine of official immunity offers public officers and employees limited protection from suits against them in their personal capacity. *Todd v. Brooks*, 665 S.E.2d 11, 12 (Ga. Ct. App. 2008). Official immunity protects individual employees from personal liability for discretionary actions taken within the scope of their official authority, if such acts are done without willfulness, malice, or corruption. *Everson v. Dekalb Cnty. Sch. Dist.*, 811 S.E.2d 9, 12

27

(Ga. Ct. App. 2018). "The rationale for this immunity is to preserve the public employee's independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight." *Id.*

Plaintiff does not dispute that she sues the Individual Defendants over how they performed discretionary acts. (*See* Doc. 20 at 21–22). So, to pierce the Individual Defendants' official immunity for her state law claim, Plaintiff must demonstrate that they acted with actual malice or an intent to injure. *Bashir v. Rockdale Cnty., Ga.*, 445 F.3d 1323, 1233 (11th Cir. 2006). According to the Supreme Court of Georgia, "'actual malice' requires a deliberate intention to do wrong and denotes 'express malice or malice in fact.'" *Id.* (quoting *Adams v. Hazelwood*, 520 S.E.2d 896, 898 (Ga. 1999)). "[A]ctual malice can be inferred from [a defendant's] conduct[,]" *Hart v. Logan*, 664 F. App'x 857, 863 (11th Cir. 2016), but it "requires more than harboring bad feelings about another." *Adams*, 520 S.E.2d at 898. So "[w]hile ill will may be an element of actual malice in many factual situations, its presence alone cannot pierce official immunity; rather, ill will must also be combined with the intent to do something wrongful or illegal." *Id.* Further, federal pleading standards allow for malice and intent to "be alleged generally." Fed. R. Civ. P. 9(b). However, "Rule 9 does not exempt Plaintiff[ ] from Rule 8's requirement that legal conclusions must be supported by plausible factual allegations to be considered by the Court." *Gardner v. Bottoms*, No. 1:21-CV-2798, 2023 WL 5596400, at *15 (N.D. Ga. July 21, 2023) (citing *Iqbal*, 556 U.S. at 678).

Here, Plaintiff alleges that Defendants set out to retaliate against her and did so through the actions recounted above. (*See* Doc. 24 ¶ 85 ("The Individual Defendants deliberately set out to retaliate against [Plaintiff] by subjecting her to abuse by her supervisors[.]")). While this allegation facially alleges intent, it is unsupported by factual allegations elsewhere in the SAC that would create a reasonable inference that Defendants acted with actual malice. *See, e.g., Puckett v. Ward*, No. 2:24-CV-3, 2024 WL 6980526, at *13 (N.D. Ga. Apr. 3, 2024) (finding that complaint's conclusory allegations of "malice aforethought," without more, were insufficient to support an inference of actual malice); *Lambert v. Williams*, No. CV 124-133, 2025 WL 2042268, at *16 (S.D. Ga. July 21, 2025) (finding general allegations of intentional conduct insufficient to establish actual malice to overcome official immunity); *Malone v. Johnson*,

28

667 F. Supp. 3d 1257, 1274–75 (N.D. Ga. 2023) (finding that complaint's allegation of "willful misconduct, malice, oppression, and the entire want of care" was "not enough to make [plaintiff's] claim of malice plausible"). Thus, Plaintiff has failed to sufficiently allege actual malice to overcome the Individual Defendants' claim of official immunity.

> 2. *Elements of IIED Claim*

Even if the Individual Defendants were not entitled to official immunity, Plaintiff has failed to sufficiently allege the elements of her intentional infliction of emotional distress claim. To state a claim, Plaintiff must allege that: "(1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Frank v. Fleet Fin., Inc. of Ga.*, 518 S.E.2d 717, 720 (Ga. Ct. App. 1999) (citing *Amstadter v. Liberty Healthcare Corp.*, 503 S.E.2d 877, 880 (Ga. Ct. App. 1998)). Such conduct "must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Martin v. N. Am. Van Lines, Inc.*, 485 S.E.2d 815, 818 (Ga. Ct. App. 1997)). Indeed, "[t]he tort is reserved for only the most egregious behavior, and a plaintiff must meet a heavy burden to establish it." *Tidwell v. Deloitte Consulting, LLP*, No. 113CV04100, 2014 WL 12845595, at *6 (N.D. Ga. July 24, 2014) (citation modified), *report and recommendation adopted*, No. 1:13-CV-4100, 2014 WL 12845611 (N.D. Ga. Aug. 18, 2014); *see Mears v. Gulfstream Aerospace Corp.*, 484 S.E.2d 659, 664 (Ga. Ct. App. 1997) ("Claimants bear a heavy burden in establishing the type of extreme and outrageous conduct necessary to sustain a claim for intentional infliction of emotional distress."). "Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law[,]" *Frank*, 518 S.E.2d at 720, that may be decided upon a motion to dismiss. *Tidwell*, 2014 WL 12845595, at *6; *see Abdul-Malik v. Airtran Airways, Inc.*, 678 S.E.2d 555, 560 (Ga. Ct. App. 2009) ("Whether severe emotional distress can be found . . . is a question for the court to decide.").

Defendants challenge the second and fourth elements, arguing that their conduct was not extreme and outrageous and that Plaintiff's emotional distress was not severe. (Doc. 26-1 at 16–18). As to the second element, in the employment context particularly, Georgia courts

note that a "major outrage in the . . . conduct complained of is essential to the tort." *Metro. Atlanta Rapid Transit Auth. v. Mosley*, 634 S.E.2d 466, 470 (Ga. Ct. App. 2006). To satisfy the extreme or outrageous conduct element, an employer's "actions must be 'so terrifying or insulting as naturally to humiliate, embarrass or frighten the plaintiff.'" *Beck v. Interstate Brands Corp.*, 953 F.2d 1275, 1276 (11th Cir. 1992) (quoting *Ga. Power Co. v. Johnson*, 274 S.E.2d 17, 18 (Ga. Ct. App. 1980)). Thus, courts in this Circuit have held that "[e]mployment related activities by themselves are insufficient to establish that conduct is extreme and outrageous." *Anderson v. Dunbar Armored, Inc.*, 678 F. Supp. 2d 1280, 1331–32 (N.D. Ga. 2009) (collecting employment-related cases rejecting claims for intentional inflict of emotional distress); *see also Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1229 (11th Cir. 1993) ("Georgia courts have held that an employer's termination of an employee—however stressful to the employee—generally is not extreme and outrageous conduct."). Even so, "[t]he existence of a special relationship between the actor and victim, such as that of employer to employee, may make otherwise non-egregious conduct outrageous." *Trimble v. Cir. City Stores, Inc.*, 469 S.E.2d 776, 778 (Ga. Ct. App. 1996).

Here, without condoning Defendants' alleged conduct, the Court finds that their retaliatory actions do not rise to the level of extreme and outrageous under the heightened requirements of Georgia law. *See, e.g., Bowers v. Estep*, 420 S.E.2d 336, 338 (Ga. Ct. App. 1992) (holding that a supervisor who threatened, intimidated and humiliated employee did not engage in outrageous conduct); *Fox v. Ravinia Club, Inc.*, 414 S.E.2d 243, 245 (Ga. Ct. App. 1991) (finding that hostile, intimidating and abusive behavior by a manager was not extreme); *Palmer v. Stewart Cnty. Sch. Dist.*, No. 4:04-CV-21, 2005 WL 1676701, at *15–16 (M.D. Ga. June 17, 2005) (finding that defendant-school district's conduct in accusing plaintiff of theft and terminating her employment was not extreme or outrageous as a matter of law); *Frazier v. Smith*, 12 F. Supp. 2d 1362, 1376 (S.D. Ga. 1998) (finding that defendant-employer's conduct in using racial slurs, verbally intimidating plaintiff, and undermining plaintiff's authority as jail administrator did not rise to the level of extreme and outrageous); *Pierri v. Cingular Wireless, LLC*, 397 F. Supp. 2d 1364, 1381 (N.D. Ga. 2005) ("Georgia law does not consider adverse employment actions 'extreme or outrageous.'").

30

In sum, the Court finds that the Individual Defendants are entitled to official immunity on Plaintiff's intentional infliction of emotional distress claim, and alternatively, that Plaintiff fails to sufficiently allege that their conduct was extreme and outrageous. Accordingly, the Individual Defendants' Motion to Dismiss is **GRANTED** with respect to Plaintiff's claim in Count VI.[9]

### G. Litigation Expenses Under O.C.G.A. § 13-6-11

Finally, Plaintiff brings a claim for litigation expenses under state law against all Defendants in Count VII. (Doc. 24 ¶¶ 88–89). The Defendants move to dismiss this claim, arguing that it must necessarily fail because it is a derivative of Plaintiff's substantive claims. (Doc. 25-1 at 21); (Doc. 26-1 at 20).

Plaintiff's claim for attorney fees and expenses is based on a provision of Georgia law which provides:

> The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

O.C.G.A. § 13-6-11. As a rule, "questions concerning bad faith, stubborn litigiousness, or unnecessary trouble and expense . . . are 'generally questions for the jury to decide.'" *Copeland v. Home Grown Music, Inc.*, 856 S.E.2d 325, 333 (Ga. Ct. App. 2021) (quoting *Garrett v. Women's Health Care of Gwinnett, P.C.*, 532 S.E.2d 164, 167 (Ga. Ct. App. 2000)).

For bad faith to warrant an award of attorney fees under the statute, it "must have arisen out of the transaction on which the cause of action is predicated." *Copeland*, 856 S.E.2d at 334 (citation modified). The kind of bad faith sufficient to support such an award "is not simply bad judgment or negligence, but it imports a dishonest purpose or some moral obliquity, and implies conscious doing of wrong, and means breach of known duty through some motive of interest or ill will." *Rapid Grp., Inc. v. Yellow Cab of Columbus, Inc.*, 557 S.E.2d 420, 426 (Ga. Ct. App. 2001) (citation and quotation marks omitted). "[B]ad faith—as contemplated by O.C.G.A. § 13-6-11—does not encompass bad faith in defending a claim after a cause of action has already arisen[,]"

---

[9] The District also moves to dismiss Plaintiff's claim at Count VI. (Doc. 25-1 at 17–21). However, the SAC asserts this claim only against the Individual Defendants. (*See* Doc. 24 at 11). As such, the District's Motion to Dismiss as to the intentional infliction of emotional distress claim is **DENIED**, as moot.

*Copeland*, 856 S.E.2d at 333, and "cannot be prompted by an honest mistake as to one's rights or duties but must result from some interested or sinister motive." *Yellow Cab*, 557 S.E.2d at 426 (citing *Plemons v. Weaver*, 533 S.E.2d 747, 748 (Ga. Ct. App. 2000)).

When the asserted basis for a recovery of attorney fees is either stubborn litigiousness or the causing of unnecessary trouble and expense, "there is not any evidence to support an award . . . if a bona fide controversy clearly exists between the parties." *Brown v. Baker*, 398 S.E.2d 797, 800 (Ga. Ct. App. 1990) (citation omitted). If a genuine dispute exists, "whether of law or fact, on liability or amount of damages, or on any comparable issue[,]" an award of fees or expenses is not authorized. *Id.* In that case, the defendant is "entitled to judgment as a matter of law on the plaintiff's claim for attorney fees and expenses of litigation . . . ." *Copeland*, 856 S.E.2d at 334 (citing *Choate Const. Co. v. Auto-Owners Ins. Co.*, 779 S.E.2d 465, 472 (Ga. Ct. App. 2015)); *see Horton v. Dennis*, 750 S.E.2d 493, 497 (Ga. Ct. App. 2013) ("Although whether a bona fide controversy exists is normally a question for the jury . . . if a bona fide controversy clearly exists between the parties, there is not 'any evidence' to support an award based on stubborn litigiousness or . . . unnecessary trouble and expense.").

Here, Plaintiff has failed to allege any facts that would support a reasonable inference of bad faith on the part of Defendants. Further, the Parties' pleadings and briefs demonstrate a bona fide controversy as to at least two issues: liability and the amount of damages. As such, Plaintiff fails to state a claim for attorney fees and litigation expenses under § 13-6-11. Accordingly, Defendants' Motions to Dismiss Count VII are **GRANTED**.[10]

## CONCLUSION

In sum, the District's Motion to Dismiss (Doc. 25) is **GRANTED**, in part, and **DENIED**, in part. The Motion is granted with respect to Plaintiff's retaliatory hostile work environment claim in Count IV and her claim for fees and expenses, pursuant to O.C.G.A. § 13-6-11, in Count VII. The Motion is denied as to Counts I, II, III, and V. Additionally, the District's Motion as to Plaintiff's claim for intentional infliction of emotional distress in Count VI is denied, as moot.

---

[10] The Court makes no finding regarding Plaintiff's potential recovery of expenses and fees under other statutes.

Further, the Individual Defendants' Motion to Dismiss (Doc. 26) is **GRANTED**, in part, and **DENIED**, in part. The Motion is granted with respect to Plaintiff's retaliatory hostile work environment claim in Count IV, her claim for intentional infliction of emotional distress in Count VI, and her claim for fees and expenses, pursuant to O.C.G.A. § 13-6-11, in Count VII. The Motion is denied as to Count III.

Thus, the following claims remain against the District: Count I (Title VII retaliation), Count II (Title VII retaliatory hostile work environment), Count III (§ 1981 retaliation), and Count V (Georgia Whistleblower Act retaliation). As to the Individual Defendants, Plaintiff's claim in Count III (§ 1981 retaliation) remains.

**SO ORDERED**, this 25th day of June 2026.

/s/ **W. Louis Sands**
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**